# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE GARCIA, MARK WILBURN, JOSE LUIS VAZQUEZ, JOSE CABALLERO, AMERICO FUENTES, FRANCISCO MARTINEZ-VILLARREAL, JOSE MEJIA, KENNETH POWELL, ROSA RAMIREZ, ALEX SANTOS, DULCE SANTOS, JAMES STEPHENS, AARON DUNNING, ALBERT FOKS, and GABRIEL STRASSER on behalf of themselves and all other persons similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> VASILIA A/K/A "VAUNA" PETERSON; ROBERT PETERSON; ORMANDO GOMEZ; ALL MY SONS OF DENTON COUNTY, INC.; GRAEBEL VAN LINES HOLDINGS, LLC d/b/a GRAEBEL MOVING SERVICES; GRAEBEL VAN LINES, LLC; GRAEBEL/ HOUSTON MOVERS, LLC; GRAEBEL MOVING AND WAREHOUSE CORP.; GRAEBEL/NORTH CAROLINA MOVERS, LLC; MIDCAP FINANCIAL, LLC; and JOHN DOES 1-10. <br><br> *Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:17-cv-1601 <br><br> JURY TRIAL DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Jose Garcia, Mark Wilburn, Jose Luis Vazquez, Jose Caballero, Americo Fuentes, Francisco Martinez-Villarreal, Jose Mejia, Kenneth Powell, Rosa Ramirez, Alex Santos, Dulce Santos, James Stephens, Aaron Dunning, Albert Foks, and Gabriel Strasser ("Plaintiffs") file this lawsuit against Vasilia a/k/a "Vauna" Peterson; Robert Peterson; Ormando Gomez; All

My Sons Moving of Denton County, Inc.; Graebel Van Lines Holdings, LLC d/b/a Graebel Moving Services; Graebel/Houston Movers, LLC; Graebel Moving and Warehouse Corp.; Graebel/North Carolina Movers, LLC; MidCap Financial, LLC; and John Does 1-10 (collectively "Defendants") and allege as follows:

## I.
## INTRODUCTION AND FACTUAL BACKGROUND

1. Graebel Companies, Inc., a non-party to this action, is the former parent company of Graebel Van Lines, Inc., and was the largest independently owned and operated moving company in North America. Graebel was in the business of providing local, intrastate, and interstate moving, storage, and relocation services for professionals.

2. The business operated out of 33 local terminal offices across the United States, and was headquartered in Wausau, Wisconsin and later in Aurora, Colorado. Administrative staff, terminal managers, and moving crews all worked for Graebel as employees, but the heart of the business—the moving truck drivers—Graebel misclassified as independent contractors.

3. In late 2014, Graebel Van Lines, Inc. underwent a change in ownership and eventually dissolved. Publicly available accounts of the transaction differ, but some combination of All My Sons, Robert Peterson, and Vasilia Peterson acquired Graebel Van Lines and reorganized it into Graebel Van Lines, LLC, effective on or about January 1, 2015. MidCap Financial, LLC financed the purchase of the business and provided working capital for Graebel Van Lines, LLC moving forward. Upon information and belief, MidCap Financial, LLC ("MidCap") has a security interest in all or virtually all of Graebel Van Lines, LLC's assets.

4. The new Graebel Van Lines ownership, which includes Ormando Gomez in addition to All My Sons and the Petersons, quickly changed implementation and enforcement of

policies governing drivers. These changes resulted in Graebel asserting more direct control over its drivers in its 33 branch locations, as more fully discussed below.

5. The new management brought other new changes. Prior to transfer of ownership, Graebel enjoyed the best safety rating in the business and a reputation as one of the best, if not the best, relocation service company in the United States. This quickly changed as the new management had experience with shipping and local moves but no experience in running a company designed to provide the full range of services provided by the Graebel business, which includes cross country moves, storage services, and a higher level of customer care. Service began to lag, and internal logistical problems began to arise.

6. In 2016, Graebel Van Lines' new ownership decided to start a plan of liquidation at the direction and control of its secured creditor, MidCap, and with the assistance of Mackinac Partners, LLC, a turnaround company. This plan of liquidation was designed to leave Graebel Drivers across the nation without their wages for the final months of their employment with Graebel.

7. Graebel Drivers started missing pay in early October of 2016, receiving only a portion of their pay calculated according to a formula determined, upon information and belief, by MidCap and Graebel. Upon information and belief, this formula was based upon revenue generated by Graebel during that timeframe. To help bolster that revenue, local terminal managers represented to Graebel Drivers that they should keep performing moving services for customers at Graebel's instruction and supervision, and that Graebel would eventually pay them. Robert Peterson and Ormando Gomez personally made this representation to Graebel Drivers as well, to keep them driving for Graebel and generating revenue to be gathered and controlled by

MidCap, Graebel's credit sleeve.

8. These representations were false, and Graebel Drivers learned that they would probably never be paid for their back wages in mid-March of 2017, when Graebel Van Lines, LLC announced its liquidation. In the time between October and mid-March, MidCap chose to direct the fruits of Graebel Drivers' labor to itself, rather than paying them their wages. But paying the Graebel Drivers their wages is not optional.

## II.
## NATURE OF ACTION

9. This is an action arising under the Fair Labor Standards Act ("FLSA"), as well as breach of contract, quantum meruit, and common law fraud. It is brought to recover unpaid wages and compensation for work performed, liquidated damages, and attorneys' fees & expenses owed to Plaintiffs and all other persons similarly situated, who acted as Graebel Drivers during the previous three years.

10. This case implicates Vasilia a/k/a "Vauna" Peterson, Robert Peterson, All My Sons of Denton County, Inc., Graebel Van Lines Holdings, LLC d/b/a Graebel Moving Services, Graebel/Houston Movers, LLC, Graebel Moving and Warehouse Corp., Graebel/North Carolina Movers, LLC, MidCap Financial, LLC, and John Does 1-10's longstanding policy of misclassifying Graebel Drivers as independent contractors, as well as their failure to compensate those employees as required by the terms of their contractual arrangements and the law.

11. Defendants' conduct violates the FLSA, which requires all employees, such as Plaintiffs, to be compensated a wage for worked performed. Defendants' failure to compensate their drivers pursuant to the terms of the parties' agreement violates Plaintiffs' statutory wage rights and their contractual rights. Furthermore, the Graebel Defendants committed fraud by

inducing the Plaintiffs and others similarly situated to continue work by making a promise to pay that Defendants never intended to fulfill.

12. Defendants required or permitted Plaintiffs to work as drivers for their companies in excess of forty (40) hours per week, but refused to compensate them at the applicable overtime rate of pay for the hours they worked. Defendants' conduct violates the Fair Labor Standards Act, which requires non-exempt employees, such as Plaintiffs, to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a). Plaintiffs were not "exempt" employees for purposes of calculating overtime. 29 U.S.C. § 213. Plaintiffs were not governed by the maximum hour requirements of 49 U.S.C. § 31502.

13. Plaintiffs bring a collective action to recover unpaid wages owed to them and all other similarly situated employees, current and former, of Defendants, who worked as Graebel Drivers at any time during the three year period before this Complaint was filed up to the present. These class members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

## III.
## PARTIES

14. Plaintiff Jose Garcia is an individual residing in Harris County, Texas.

15. Plaintiff Mark Wilburn is an individual residing in Mecklenburg County, North Carolina.

16. Plaintiff Jose Luis Vazquez is an individual residing in Milwaukee County, Wisconsin.

17. Plaintiff Jose Caballero is an individual residing in Fort Bend County, Texas.

18. Plaintiff Americo Fuentes is an individual residing in Fort Bend County, Texas.

19. Plaintiff Francisco Martinez-Villarreal is an individual residing in Harris County, Texas.

20. Plaintiff Jose Mejia is an individual residing in Harris County, Texas.

21. Plaintiff Kenneth Powell is an individual residing in New Haven County, Connecticut.

22. Plaintiff Rosa Ramirez is an individual residing in Harris County, Texas.

23. Plaintiff Alex Santos is an individual residing in Harris County, Texas.

24. Plaintiff Dulce Santos is an individual residing in Harris County, Texas.

25. Plaintiff James Stephens is an individual residing in Mecklenburg County, North Carolina.

26. Plaintiff Aaron Dunning is an individual residing in Brazoria County, Texas.

27. Plaintiff Albert Foks is an individual residing in Arapahoe County, Colorado.

28. Plaintiff Gabriel Strasser is an individual residing in Seminole County, Florida.

29. Defendant Vasilia Peterson in an individual residing in Dallas County, Texas.

30. Defendant Robert Peterson in an individual residing in Dallas County, Texas.

31. Defendant Ormando Gomez is an individual residing in Dallas County, Texas.

32. Defendant All My Sons of Denton County, Inc. is a foreign corporation doing business in Texas and may be served through its registered agent, Corporation Service Company d/b/a CAC, 211 E. 17th Street, Suite 620, Austin, Texas 78701.

33. Defendant Graebel Van Lines Holdings, LLC d/b/a Graebel Moving Services is a Texas limited liability company and may be served through its registered agent, Capitol

Corporation Service, Inc., 206 E. 9th Street, Suite 1300, Austin, Texas 78701.

34. Defendant Graebel Van Lines, LLC is a Texas limited liability company and may be served through its registered agent, 206 E. 9th St., Suite 1300, Austin, Texas 78701-4411.

35. Defendant Graebel/Houston Movers, LLC is a Texas limited liability company and may be served through its registered agent, Capitol Corporation Service, Inc., 206 E. 9th Street, Suite 1300, Austin, Texas 78701.

36. Defendant Graebel Moving and Warehouse Corp. is a Wisconsin Corporation doing business in Texas, and it may be served through the Secretary of State at its primary place of business, 1701 Airport Road, Waukesha, Wisconsin 53188. Graebel Moving and Warehouse Corp. does not have a designated agent for service of process, and the lawsuit arises from its significant contacts in and with the State of Texas.

37. Defendant Graebel/North Carolina Movers, LLC is a North Carolina limited liability company doing business in Texas and, it may be served through the Secretary of State at its primary place of business, 2901 Stewart Creek Boulevard, Charlotte North Carolina, 28216. Graebel/North Carolina Movers, LLC does not have a designated agent for service of process, and the lawsuit arises from its significant contacts in and with the State of Texas.

38. Defendants identified in Paragraphs 31-36 are collectively referred to in this Complaint as the "Graebel Entities."

39. Defendant MidCap Financial Services, LLC is a Maryland Limited Liability Company doing business in Texas and may be served through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

40. Defendants John Doe 1-10 are unnamed individuals and entities who, through the

course of discovery, may be revealed to be employers of Plaintiffs pursuant to the Fair Labor Standards Act or may be revealed to be alter egos of certain Graebel entities.

## IV.
## JURISDICTION AND VENUE

41. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1367 and 29 U.S.C. § 216(b).

42. Venue is proper pursuant to 28 U.S.C. § 1391(b), because Defendants and Plaintiffs transacted business within this judicial district and the events underlying this complaint occurred within this judicial district.

## V.
## FLSA COVERAGE

43. At all material times, Defendants Vasilia a/k/a "Vauna" Peterson, Robert Peterson, Ormando Gomez, Graebel Van Lines Holdings, LLC d/b/a Graebel Moving Services, Graebel Van Lines, LLC, Graebel/Houston Movers, LLC, Graebel Moving and Warehouse Corp., Graebel/North Carolina Movers, LLC, All My Sons of Denton County, Inc. and John Does 1-10 have been enterprises within the meaning of 3(r) and 3(s) of the FLSA and Defendants have had a gross annual business volume in excess of $500,000.00. 29 U.S.C. §§ 203(r), 203(s).

44. At all material times, Plaintiffs were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206 and 207.

45. Upon information and belief, Defendants Vasilia "Vauna" Peterson, Robert Peterson, Ormando Gomez, Graebel Van Lines Holdings, LLC d/b/a Graebel Moving Services, Graebel Van Lines, LLC, Graebel/Houston Movers, LLC, Graebel Moving and Warehouse

Corp., Graebel/North Carolina Movers, LLC, All My Sons of Denton County, Inc. and John Does 1-10 had the authority to hire and fire employees, make decisions regarding Graebel's policies and procedures, make decisions regarding employee compensation and capital expenditures, and ultimately, make the decision not to pay drivers pending the liquidation of Graebel Van Lines, LLC and the other Graebel Entities.

46. Pursuant to 29 U.S.C. § 203(d), Defendants Vasilia "Vauna" Peterson, Robert Peterson, Ormando Gomez, Graebel Van Lines Holdings, LLC d/b/a Graebel Moving Services, Graebel Van Lines, LLC, Graebel/Houston Movers, LLC, Graebel Moving and Warehouse Corp., Graebel/North Carolina Movers, LLC, All My Sons of Denton County, Inc. and John Does 1-10 acted directly or indirectly in the interest of Plaintiffs and other Graebel Drivers' employment as their employer, which makes them jointly liable as employers under the FLSA.

## VI.

## **STATEMENT OF FACTS**

47. Plaintiffs were employed during the last three years as Graebel Drivers. During the course of their employment, when a work assignment became available, Graebel would contact a Graebel Driver, such as Plaintiffs, and if the driver accepted the assignment, he or she was responsible for the following at the direction of Graebel:

> loading and unloading, packing and unpacking, crating and uncrating, pad-wrapping, decking, strapping, securing, unwrapping, debris removal, and other services that Company [Graebel/Houston Movers, LLC], or Carrier [Graebel Van Lines, LLC], has agreed to provide for its customer. The transportation and related services will be as indicated in the orders for service, other informational documents, applicable tariffs, contracts, government tenders, bid documents, and Graebel's Policies and Procedures.

(*See* Exhibit 1, p. 3, Graebel Independent Contractor Agreement for Transportation Services).[1]
Furthermore, "[d]uring the time the Vehicle is operated by the Company [Graebel/Houston Movers, LLC] and/or Carrier [Graebel Van Lines, LLC], Company and/or Carrier shall have the exclusive possession, control, and use of the Vehicle and shall assume complete responsibility for the operation of the Vehicle." (*Id.*).

48. In addition to requirements set forth in the agreement itself, Graebel's Policies and Procedures in turn incorporate sixteen independent documents setting forth additional requirements which govern the terms of employment between drivers and Graebel, and which are made available to drivers "on request" and "during normal business hours." (Exhibit 1-K, Graebel's Policies and Procedures).

49. As a matter of economic reality, Graebel Drivers are economically dependent upon Graebel. Graebel controls the method and manner in which the drivers perform their duties, have a substantial financial investment in the Graebel Drivers' expenses, and control the opportunity for profit and loss by acting as gatekeeper for getting work assignments. The Graebel Drivers' duties involve largely unskilled labor, and the driver's relationship with Graebel is intended to be permanent. As a factual matter, the vast majority of Graebel Drivers drive for Graebel full time and do not drive for other carriers.

50. Graebel Drivers, like Plaintiffs, are not paid a wage as required by the FLSA. Nor are they paid overtime, even though during the time the Plaintiffs worked for the Defendants, they regularly worked in excess of 40 hours in a workweek. Instead, Graebel Drivers are

---

[1] Exhibit 1 is Jose Garcia's contract. Other drivers may have signed different forms of contracts, but based upon interviews with named plaintiffs, the above is a factually accurate description of the reality of their employment relationship.

compensated pursuant to a complex Contractor's Rate Schedule.

51. Following completion of a work assignment, Graebel Drivers are required to submit a form for payment calculated pursuant to the the Contractor's Rate Schedule, which is then purportedly credited into the driver's Settlement Account. According to the parties' agreement, the Graebel Drivers can have the balance in the Settlement Account directly deposited into a bank account of their choosing bi-monthly or they can leave it in the Settlement Account where it purportedly earns interest and can be collected at the driver's convenience.

52. Beginning in the fall of 2016, Graebel stopped paying Plaintiffs the full amount of wages owed, and began to pay a partial 'advance.'

53. After Graebel quit paying its drivers, it continued to encourage them to take work assignments and invoice them based on the promise that they would eventually be paid. Promises became excuses, and eventually, in March of 2017, Graebel publicly announced its intent to liquidate. Adding insult to injury, rather than paying the Graebel Drivers, it directed them (and all of its other creditors) to make a claim by email and be paid if "excess funds are available" following satisfying its secured creditor (MidCap) in liquidation. (*See* https://www.graebelmoving.com/customer-and-creditor-notice/).

54. The Defendants knew of, approved of, and benefited from Plaintiffs' regular and overtime work, even after it stopped paying drivers. Defendants induced Plaintiffs to keep taking work assignments based on the promise of payment for work performed.

55. Defendants did not make a good faith effort to comply with the minimum wage or overtime provisions contained within the FLSA. Defendants' actions were willful and in blatant disregard for Plaintiffs' federally protected rights.

56. As non-exempt employees, Plaintiffs are entitled to be paid their regular wages and to be paid an overtime premium for all work performed during the hours worked over forty (40) in each workweek. Defendants regularly and consistently failed to pay Plaintiffs the required overtime premium while they were employed by Defendants, and Plaintiffs worked in excess of forty (40) hours in many of the weeks they worked for the Defendants.

# VI.
## CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF THE FLSA

57. Based on the foregoing, Defendants violated the FLSA by failing to properly compensate Plaintiffs for work performed in the employ of the Defendants. 29 U.S.C. § 206.

58. Plaintiffs have suffered damages as a direct result of Defendants' unlawful actions.

59. Defendants are liable to Plaintiffs for wages, unpaid overtime compensation, liquidated damages, attorneys' fees & expenses under the FLSA, for the three-year period preceding the filing of this lawsuit. 29 U.S.C. § 216.

### COUNT TWO
### BREACH OF CONTRACT

60. Defendants materially breached their agreements with the Graebel Drivers by failing to pay Plaintiffs the amount due and owing under the agreement for compensable work performed for Defendants. Defendants further breached their agreements with the Graebel Drivers by failing to return 'escrow' or 'reserve' deposits paid to Defendants at the commencement of the Graebel Drivers' employment, by wrongfully charging for license plate renewal for a full year one month before Graebel's liquidation, and by removing the mechanism to appeal or challenge claims made by customers against Graebel Drivers. Many of these claims were improper and were simply deducted from Graebel Drivers' pay. The named Plaintiffs alone have incurred damages in the amount of over $500,000.00.

## COUNT THREE
## QUANTUM MERUIT

61. In the alternative to Plaintiffs' breach of contract claims, Plaintiffs provided compensable and valuable moving services for the benefit of Graebel, who accepted those services knowing that Plaintiffs expected compensation for them.

## COUNT FOUR
## FRAUD

62. After Graebel quit paying Graebel Drivers, it induced them, including Plaintiffs, to continue taking work assignments on promises that payment would be forthcoming. These representations were directed from Graebel Van Lines, LLC's management and communicated to the individual drivers through Graebel's local driver liaisons, usually the terminal's general managers. In Houston, these representatives included Dan Tanner and Don Rupe, but these promises of payments were made to drivers at every terminal by the terminal's respective manager.

63. These misrepresentations were false, material, made knowingly or recklessly, and the representations were made with the intent to induce Graebel Drivers, like Plaintiffs, to continue to take work assignments and perform moving services without getting paid. At the time Defendants made these representations, they had no intent of paying the Graebel Drivers. Graebel Drivers, like Plaintiffs, relied on these representations to their detriment and suffered damages as a result.

## SUCCESSOR LIABILITY OF ASSET PURCHASERS

64. Upon information and belief, many of the terminals sold or are selling all or substantially all of their assets as a going concern. In acquiring these assets, the companies that acquired them acquired the Graebel Entities' FLSA liabilities.

65. When liability is based on a violation of a federal statute relating to labor relations or employment, a federal common law standard of successor liability applies that is more favorable to Plaintiffs.

66. Federal common law presumes successor liability absent the showing of sufficient good reasons to the contrary.

67. There is a substantial continuity of business operations from the Graebel Entities to those companies that purchased the assets of Graebel Entities operating out of specific terminals. Those companies were on notice of the Graebel Drivers' claims, and are able to provide relief to the Graebel Drivers.

## VEIL PIERCING AND ALTER EGO
(against MidCap, Ormando Gomez, Robert and Vasilia a/ka/ "Vauna"
Peterson, All My Sons, and Graebel Van Lines, LLC)

68. The Graebel Drivers hereby expressly allege that Defendants MidCap, Ormando Gomez, Robert and Vasilia a/k/a "Vauna" Peterson, All My Sons, Graebel Van Lines, LLC, and John Does 1-10 are each liable under veil-piercing and/or alter-ego theories of vicarious liability.

69. Specifically, the corporate forms of the Graebel Entities ought to be disregarded because, *inter alia*:

   a. their forms were used as a sham to perpetrate a fraud insofar as one or more of the defendants (MidCap, Ormando Gomez, Robert Peterson, Vasilia "Vauna" Peterson, All My Sons, and Graebel Van Lines) used the Graebel Entities to dupe the Graebel Drivers into continuing to drive for

Graebel. The Defendants did so by directing Graebel employees to make false promises of payment even though the Defendants knew at that time that they had no intention of providing Graebel with sufficient funds to pay the Graebel Drivers for their work;

b. their forms were organized and operated as a mere tool or business conduit ("alter ego") of the Defendants (MidCap, Ormando Gomez, Robert Peterson, Vasilia Peterson, All My Sons, and Graebel Van Lines)

c. their forms were used to evade an existing legal obligation insofar as one or more of the Defendants (MidCap, Ormando Gomez, Robert Peterson, Vasilia a/k/a "Vauna" Peterson, All My Sons, and Graebel Van Lines) used the Graebel Entities as a means to shield themselves (the Defendants) from liability for claims by unpaid Graebel Drivers, who interfaced with the Graebel Entities and operated out of their respective local terminals;

d. their forms were used to circumvent a statute insofar as one or more of the Defendants (MidCap, Ormando Gomez, Robert Peterson, Vasilia a/k/a "Vauna" Peterson, All My Sons, and Graebel Van Lines) attempted to insulate themselves from liability by utilizing the Graebel Entities as shield-like intermediaries between the Graebel Drivers and the Defendants;

e. the Graebel Entities were inadequately capitalized with the effect of creating an injustice insofar as, at least as early as October 2016, one or more of the Defendants (MidCap, Ormando Gomez, Robert Peterson, Vasilia a/k/a "Vauna" Peterson, All My Sons, and Graebel Van Lines) failed to provide the Graebel Entities with sufficient capital for the Graebel Entities to continue paying their drivers despite assuring the Graebel Drivers that payment was forthcoming; and

f. one or more of the defendants (MidCap, Ormando Gomez, Robert Peterson, Vasilia a/k/a "Vauna" Peterson, All My Sons, and Graebel Van Lines) caused the Graebel Entities to be used for the purpose of perpetrating an actual fraud, i.e., duping the Graebel Drivers into continuing to drive without pay based on the false promise of payment, and perpetrated an actual fraud on the Graebel Drivers primarily for the Defendants' direct personal benefit.

## **LIQUIDATED DAMAGES**

70. Plaintiffs are entitled to recovery of liquidated damages pursuant to 29 U.S.C. §§ 216, 260.

## ATTORNEYS' FEES

71. Plaintiffs are entitled to recovery of their attorneys' fees and expenses pursuant to 29 U.S.C. § 216 (b) and Texas Civil Practice and Remedies Code §§ 38.001 (1), (2) and (8).

## IMPOSITION OF A CONSTRUCTIVE TRUST

70. Plaintiffs hereby ask the Court to impose a constructive trust on all property and proceeds that can be directly traced to the fraud perpetrated by Defendants.

## DEMAND FOR JURY

71. Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand:

1. Judgment against Defendants for an amount equal to Plaintiffs' unpaid wages at the applicable rate and at time and a half for overtime work;

2. Judgment against Defendants equal to the amounts due and owing pursuant to the terms of the parties' contractual arrangement;

3. The fair market value of the work performed by Plaintiffs for the benefit of Defendants;

4. An equal amount to Plaintiffs' wage damages as liquidated damages;

5. Judgment against Defendants that their violations of the FLSA was willful;

6. An award of prejudgment interest;

7. All costs and attorneys' fees & expenses incurred prosecuting these claims;

8. Leave to amend to add claims under applicable state laws; and

9. For such further relief as the Court deems just and equitable.

Respectfully submitted,

*/s/ Benjamin W. Allen*
Benjamin W. Allen
State Bar No. 24069288
Federal I.D. No. 1058996
FELDMAN & FELDMAN, P.C.
3355 West Alabama, Suite 1220
Houston, Texas 77098
Telephone: (713) 986-9471
Facsimile: (713) 986-9472
ben.allen@feldman.law

**ATTORNEY OF RECORD AND CO-LEAD COUNSEL FOR PLAINTIFFS**

Robert H. Ford
State Bar No. 24074219
Federal I.D. No. 1392569
FOGLER, BRAR, FORD, O'NEIL & GRAY LLP
711 Louisiana St., Suite 500
Houston, TX 77002
Telephone: (713) 325-8241
Facsimile: (713) 574-3224
rford@fbfog.com

**CO-LEAD COUNSEL FOR PLAINTIFFS**