# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE GARCIA, et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-1601 |
| | § | |
| VASILIA a/k/a "VAUNA" PETERSON, et al., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to conditionally certify a collective action and authorize notice filed by plaintiffs Jose Garcia, Mark Wilburn, Jose Luis Vazquez, Jose Caballero, Americo Fuentes, Francisco Martinez-Villarreal, Jose Mejia, Kenneth Powell, Rosa Ramirez, Alex Santos, Dulce Santos, James Stephens, Aaron Dunning, Albert Foks, Gabriel Strasser, Larry Burt, Jeff Casady, Wlodzimierz Debski, Albert Dennis, Ivan Diaz, Ramon Diaz, Randal Morton Hooper, General Lee McKinney, Michael Kee, Ed Krapf, Jordan O'Donnell, Marselo Rodriguez, Chet Painter, William Shelton, and Michael Willin (collectively, "Plaintiffs"). After reviewing the motion, responses, reply, relevant exhibits, and applicable law, the court is of the opinion that the motion should be GRANTED.

## I. BACKGROUND

This is a case brought by individuals who drove moving trucks for a company originally known as Graebel Companies, Inc. Dkt. 104. According to Plaintiffs, Graebel Companies, Inc. became Graebel Van Lines, LLC, in 2015 and was eventually dissolved in March 2017. *Id.* There were thirty-three local terminal offices in the United States. *Id.* The drivers each worked under an independent contractor agreement, but Plaintiffs contend that they were all governed by the same

policies and procedures, and the main company controlled the method and manner in which the drivers performed their duties. *Id.* Plaintiffs allege that they were not paid a wage or overtime even though they regularly worked in excess of forty hours a week. *Id.* They were, instead, compensated, initially, via a complex contractor's rate schedule. *Id.* However, in the fall of 2016, the company started providing small partial advances to Plaintiffs instead of paying their wages under the schedule. *Id.* Plaintiffs believe the decision to change the pay was made by the MidCap Funding X Trust ("MidCap"), the assignee of the initial loan for the earlier ownership transition. *Id.*; *see* Dkt. 92-8.

Plaintiffs were all drivers based at one of Graebel's thirty-three terminal branch locations, which operated as subsidiaries. Dkt. 104. Many of the named plaintiffs reside in Texas, but there are named plaintiffs from nine other states. *See id.* They filed suit against Vasilia a/k/a Vauna Peterson, Robert Peterson, Ormando Gomez, All My Sons of Denton County, Inc., Graebel Van Lines Holdings, LLC d/b/a Graebel Moving Services, Graebel Van Lines, LLC, Graebel/Houston Movers, LLC, Graebel/Illinois Movers, LLC, Graebel/Los Angeles Movers, LLC, Graebel Moving and Warehouse Corp., Graebel Moving and Warehouse, LLC, Graebel/North Carolina Movers, LLC, Graebel/St. Louis Movers, LLC, MidCap, MidCap Financial Trust f/k/a MidCap Financial, LLC,[1] and John Does 1-10. *Id.* The claims are as follows: (1) violation of the Fair Labor Standards Act ("FLSA") for failure to pay wages against all named defendants; (2) violation of the FLSA for failure to keep records against all named defendants; (3) breach of contract against all named defendants; (4) quantum meruit against all named defendants; (5) fraud against all named defendants;

---
[1] The court recently dismissed the claims against MidCap Financial Trust f/k/a MidCap Financial, LLC, for lack of personal jurisdiction. Dkt. 113.

(6) conspiracy and aider and abetting liability for fraud against the Petersons, Gomez, and MidCap; (7) successor liability of asset purchasers against John Does 1–10; and (8) veil piercing and alter ego against MidCap, Gomez, the Petersons, All My Sons, and Graebel Van Lines, LLC; and (9) agency liability against MidCap. *Id.*

Plaintiffs filed these claims on behalf of themselves and others similarly situated, and they now seek authority to mail and email a notice of rights and a consent form to all potential collective action members. Dkt. 56. The proposed class is defined as follows:

> All the Graebel Drivers performing driving services [from July 1, 2016 to present,] for the entities identified as "GMI Subsidiaries" in the Graebel Acquisition Agreement, their successors, and including but not limited to, the subsidiaries making up the 33 Graebel branch terminal locations.

*Id.* Plaintiffs also seek an order compelling the defendants to provide them with the names, birth dates, driver's license numbers, telephone numbers, email addresses, all known addresses, and dates of employment of all individuals who performed driving services for entities identified as "GMI Subsidiaries" in the Graebel Acquisition Agreement and their successors. *Id.*

The motion to certify is now ripe for disposition.

## II. LEGAL STANDARD

Section 207(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of forty hours per week. 29 U.S.C. § 207 (a) (2012). Section 216(b) creates a cause of action against employers who violate the overtime compensation requirements. *Id.* § 216 (b). Section 216(b) also permits an employee to bring a collective action lawsuit against an employer on "behalf of himself . . . and other employees similarly situated." *Id.* Employees who wish to participate in a § 216(b) collective action must affirmatively "opt-in" to the

action by filing a written consent with the court. *Id.* The "opt-in" procedure of § 216(b) illustrates its "fundamental, irreconcilable difference" from a class action under Federal Rule of Civil Procedure 23(c); in a Rule 23 proceeding, persons within the class description are automatically considered class members and must "opt-out" of the suit if they do not wish to participate. *LaChapelle v. Owens–Ill., Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

The Fifth Circuit has declined to adopt a specific test to determine when a court should certify a collective action or grant notice in an FLSA collective action, but most federal courts (including this court) have adopted the *Lusardi* test. *Badgett v. Tex. Taco Cabana*, *L.P.*, No. H–05–3624, 2006 WL 2934265, at *1–2 (S.D. Tex. Oct. 12, 2006) (Miller, J.). Under the *Lusardi* test, a district court engages in a two-step analysis to determine whether the potential plaintiffs are "similarly situated." *Id.* at *1.

The two stages of the *Lusardi* test are the "notice stage" and the "decertification stage." *Id.* At the notice stage, the court makes a decision, usually solely based on the pleadings and any submitted affidavits, whether to conditionally certify a collective action and give notice to potential class members. *See Mooney v. Aramco Servs*, 54 F.3d 1207, 1213 (5th Cir. 1995). At this stage, the court applies a "fairly lenient standard" because there is often minimal evidence available. *Id.* at 1214. Courts, in fact, "appear to require nothing more than substantial allegations that putative class members were together the victims of a single decision, policy or plan." *Id.* (quoting *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). Thus, the notice stage analysis typically results in conditional certification of a representative class. *Badgett*, 2006 WL 2934265, at *1. After conditional certification, the "putative class members are given notice and the opportunity to 'opt-in.'" *Mooney*, 54 F.3d at 1214.

The second stage—the "decertification stage"—is typically precipitated by the defendant filing a motion to decertify after the opt-in period has concluded and discovery is largely complete. *Id.* "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Id.* If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and dismisses the opt-in plaintiffs without prejudice. *Id.* If the class is still similarly situated, the court allows the collective action to proceed. *Id.*

A "decision to certify, even if subject to correction at the decertification stage, is not without consequences" as "[t]oo much leniency at the notice stage can lead to a 'frivolous fishing expedition conducted by the plaintiff at the employer's expense'" and "extreme leniency at the notice stage can result in conditional certification that must later be revoked at the eve of trial . . . when it becomes obvious that manageability concerns make collective action impossible." *Lang v. DirecTV, Inc.*, No. 10–1085, 2011 WL 6934607, at *6 (E.D. La. Dec. 30, 2011) (citations omitted). Therefore, while the notice stage standard is lenient, it is not automatic. *Badgett*, 2006 WL 2934265, at *2. The plaintiff bears the burden of making a preliminary factual showing that a similarly situated group of potential plaintiffs exists. *Id.* To establish this, the plaintiff must make a minimal showing that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Maynor v. Dow Chem. Co.*, No. G–07–0504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008) (Rosenthal, J.) (citing *Prater v. Commerce Equities Mgmt. Co.*, No. H–07–2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov.

19, 2007) (Rosenthal, J.); *Simmons v. T–Mobile USA, Inc.*, No. H–06–1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007) (Atlas, J.)).

### III. ANALYSIS

Plaintiffs assert that there are sufficient common facts and issues to establish that a collective action would promote judicial efficiency and that there are enough similarly situated drivers who want to opt in to the class to justify certifying the collective action. Dkt. 56. MidCap Financial Trust f/k/a MidCap Financial, LLC, and MidCap Funding X Trust (collectively, the "MidCap Entities") filed a response in which they argue that conditional certification is premature, there is not a class of similarly situated individuals that exists on a nationwide basis, and class certification is inappropriate due to the unique facts associated with each potential class member. Dkt. 67. A response asserting similar arguments was filed by the Petersons, Gomez, Graebel Van Lines, Holdings, LLC d/b/a Graebel Moving Services, Graebel Van Lines, LLC, Graebel/Houston Movers, LLC, Graebel/Illinois Movers, LLC, Graebel/Los Angeles Movers, LLC, Graebel Moving and Warehouse Corp., Graebel Moving and Warehouse, LLC, Graebel/North Carolina Movers, LLC, and Graebel/St. Louis Movers, LLC (collectively, the "Graebel Defendants"). Dkt. 61.

**A.      Is Conditional Certification Premature?**

The Graebel Defendants and the MidCap Entities argue that conditional certification is premature. Dkts. 61, 67. The gist of this argument is that the court should rule on the MidCap Entities' dispositive motions before addressing conditional certification. *See* Dkt. 61 at 6, Dkt. 67 at 7. The court has ruled on MidCap's motions, and it finds that it is not premature to now turn to the motion for conditional certification.

**B.     Similarly Situated Individuals Exist and Want to Opt In**

Plaintiffs contend that, as of the filing of the motion, sixteen Greabel drivers had opted in to the collective action.[2] Dkt. 56. Additionally, they provide an affidavit in which Wendy Vazquez, who was employed by Graebel Van Lines from 2004 through 2017, states that she knows "many other drivers who would be interested in joining [the lawsuit] if they were provided with a formal notice of this lawsuit." Dkt. 56, Ex. 3. They have also provided notices of consent for four additional putative class members. Dkt. 56, Exs. 4–7. Plaintiffs thus contend that there is ample evidence that other aggrieved individuals exist and want to opt in to the lawsuit. Dkt. 56.

The MidCap Entities and the Graebel Defendants assert that Plaintiffs have not met their burden of demonstrating that there is a class of similarly situated individuals on a nationwide basis and that their assertion that there are similarly situated individuals subject to a single, common pay practice is unsupported by evidence. Dkts. 61 at 6–11, 67 at 9–10. They also contend that the highly fact-intensive analysis required in this case renders it unsuitable for collective action treatment. Dkt. 61 at 13–17; Dkt. 67 at 11–13.

**1.     Vazquez Affidavit**

The Graebel Defendants assert that the affidavit of Wendy Vazquez fails to declare under penalty of perjury under the United States that her declaration is true and correct and that it therefore lacks foundation and "is not admissible to prove anything." Dkt. 61 at 12. Plaintiffs assert that they are "not providing a formal response to the Graebel [Defendants'] objections to the admissibility of certain portions of Mrs. Vazquez's declaration except to note that this Court routinely overrules these

---

[2] It appears that these sixteen drivers are individuals who Plaintiffs have now named as named plaintiffs.

types of objections." Dkt. 70 at 4 n.3 (citing *Aguirre v. Tastee Kreme #2*, No. H-16-2611, 2017 WL 2350064 (S.D. Tex. May 31, 2017) (Miller, J.)).

The final portion of Vazquez's declaration states: "I, Wendy Vazquez, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge." Dkt. 56, Ex. 3. Under 28 U.S.C. § 1746,

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746. The court has no reason to believe that the declaration was signed outside of the United States. Thus, Vazquez's failure to state "under the laws of the United States of America" does not render the declaration inadmissible. The Graebel Defendants' objection to the admissibility of the Vazquez declaration on the ground that is does not state "under the United States" is OVERRULED.

### 2. Evidence of a Class of Similarly Situated Individuals

The Graebel Defendants assert that Plaintiffs have produced no evidence that other employees even worked more than forty hours much less that they were not compensated for their work. Dkt. 61 at 7. They point out that the notices of consent Plaintiffs filed do not state whether the opt-in plaintiffs were misclassified as independent contractors, do not provide dates of employment or branches at which they worked, and do not state if the opt-in plaintiffs worked overtime and were not compensated. *Id.* They also contend that the court should deny nationwide certification because Plaintiffs have offered no basis on which to certify a nationwide class. *Id.* at 8. They argue that Plaintiffs have provided no evidence that the policies and practices applied across the board. *Id.* at 10.

The MidCap Entities similarly argue that Plaintiffs have not presented minimal evidence that a group of aggrieved individuals were subject to a singular, unlawful decision, plan, or policy. Dkt. 67. They note that Plaintiffs do not provide affidavits of any drivers and instead provide a single declaration of a former Graebel employee. Dkt. 67 at 10. They point out that this declaration does not identify the roles of the MidCap Entities regarding the alleged FLSA violations, does not state which plaintiff worked for which defendants, does not address the calculation of the drivers' compensation under the rate schedule or state why it was inferior to an hourly wage plan, and does not disclose that the drivers could receive assignments directly from customers. *Id.* It also takes issue with the consent forms, which do not state which defendant "employed" the opt-in plaintiff and does not allege that they were misclassified or worked overtime *Id.*

In reply, Plaintiffs point to specific evidence that supports their claim that there was a nationwide pay practice that negatively impacted the putative class. Dkt. 70. First, they discuss an

9

email sent by Graebel's Chief Operating Officer ("COO") to Graebel's "Valued Contractors" on December 8, 2016. *Id.* at 3; Dkt. 70, Ex. 1. In this email, the COO states that Graebel was "still working on accurately posting revenue and expenses to [the drivers'] accounts." Dkt. 70, Ex. 1. They note that this exhibit is attached to the live pleading and is not a surprise. Dkt. 70 at 3. They also point to an email from Graebel's executive vice president of operations sent on February 3, 2017, in which he thanked the recipients for joining an "All Driver Call" and apologized for "all events which caused hardship to any of you." *Id.*; Dkt. 70, Ex. 2 (also attached to the first amended complaint). With regard to Vazquez's declaration, Plaintiffs note that she states that when Graebel stopped paying drivers it was company-wide and affected all Graebel terminals and each Graebel driver. *Id.* (citing Dkt. 56, Ex. 3). Plaintiffs point out that this evidence clearly demonstrates that these matters impacted all branch locations. Plaintiffs contend that it is "baffling that the issue of a nationwide pay practice is even in dispute." Dkt. 70 at 4.

The court agrees that Plaintiffs have met their burden of showing there was a nationwide pay issue that impacted all members of the putative class. Vazquez states that she is familiar with the way in which the drivers were regulated and paid, that they were not paid overtime and were instead compensated under a contractor's rate schedule. Dkt. 56, Ex. 3. However, starting in the fall of 2016, they did not receive the full amount on their schedule and eventually stopped being paid at all. *Id.* She specifically states that it was "a company-wide phenomenon that affected all Graebel terminals and each Graebel Driver." *Id.* The court is unconcerned that the notices of consent do not provide specific information about which terminal the drivers worked for or when, as there are many named plaintiffs from several different states, which shows that people from different terminals throughout the nation wish to be part of this lawsuit.

### 3. Highly Individualized and Fact-Intensive Analysis

The Graebel Defendants argue that in making the similarly situated inquiry, courts should consider the extent to which the members of a proposed class will rely on common evidence. Dkt. 61 at 13. They point out that in the Fifth Circuit, the inquiry regarding whether one is an independent contractor versus an employee is unique to each individual and argue that the mere fact that the drivers were all classified as independent contractors is not sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders the putative class members similarly situated. *Id.* at 14 (citing four district court cases from other circuits). The Graebel Defendants additionally assert that the proposed class may be exempt from the FLSA under the federal Motor Carriers Act, which also requires an individualized inquiry. *Id.* at 16.

The MidCap Entities also assert that whether the drivers were independent contractors is very fact intensive and will be even more so here since there are actually over forty different "employers" in thirty different regions across the country. Dkt. 67 at 11. The MidCap Entities additionally assert that the court will have to make a unique, fact-based inquiry to determine which plaintiffs were entitled to overtime under the Motor Carriers Act. *Id.* at 12. They note that the court will have to determine whether each driver worked more than forty hours and assert that the court will also have to conduct separate analyses with regard to the common law claims, which are not conducive to classwide litigation. *Id.* at 13.

Plaintiffs point out that the defendants readily point to provisions in a single independent contractor agreement to establish policies that govern all drivers, and that Vazquez's declaration makes clear that all drivers were treated the same nationwide. Dkt. 70. They then note that the assertion that damages may differ among the drivers does not merit a conclusion that the claims are

too individualized. *Id.* (citing *Albanil v. Coast 2 Coast, Inc.*, No. H-08-486, 2008 WL 4937565 (S.D. Tex. Nov. 17, 2008) (Miller, J.)).

The heart of Plaintiffs' claim is that they were not paid for their work during the final months Graebel was operating, and they have submitted enough evidence that this decision affected all members of the putative class. To the extent that each driver was owed a different amount depending on the hours he or she worked, there has been no evidence that there will be any meaningful dispute regarding how much the drivers actually worked. The same can be said for the Motor Carriers Act exemption; the factors are definitely fact-intensive, but it is doubtful that there will be significant individualized disputes regarding whether, for example, a particular motor vehicle weighed more than 10,000 pounds or was used to carry hazardous waste. *See* Dkt. 67 at 12 (listing factors courts consider under the Motor Carriers Act exemption). Moreover, the court finds that this exemption is a merits-based argument best reserved for the decertification stage of the *Lusardi* analysis. *See Cruz v. ConocoPhillips*, 208 F. Supp. 3d 811, 817–18 (S.D. Tex. 2016) (Bennett, J.) (noting that "[c]ourts in this district have typically declined to perform [an independent contractor exemption] analysis at the notice stage," but acknowledging that some courts "have recently begun to clarify that their refusal to apply the economic realities test at this stage . . . does not mean its application is irrelevant to the determination of whether a class is similarly situated"); *In re Wells Fargo Wage & Hour Emp't Practices Litig.*, No. H-11-2266, 2012 WL 3308880, at *28 (S.D. Tex. Aug. 10, 2012) (Miller, J.) (collecting cases in which courts in the Southern District of Texas "have determined that exemptions are merit-based and not relevant at the notice stage").

### 4.  Evidence That Other Similarly Situated Plaintiffs Want to Join

Plaintiffs point out that, as of the date of December 2017, there were thirty-one named

plaintiffs, four notices of consent filed with the motion to certify, and five additional notices of consent filed with the reply. Dkt. 70. Additionally, Vazquez stated in her declaration that she knows many other drivers who will want to join upon receipt of formal notice. Dkt. 56, Ex. 3. The court finds that there is ample evidence that similarly situated individuals exist who want to opt in to this lawsuit.

C.  **Form of Notice**

Plaintiffs provided a proposed notice and consent form with their motion. Dkt. 56, Ex. 1. The Graebel Defendants argue that the court should require the parties to meet and confer on a mutually acceptable notice and point out several aspects of the proposed notice that it deems unfair. Dkt. 61 at 18–19. The Graebel Defendants also request that a third-party administrator conduct the mailing of the notice. *Id.* Finally, the Graebel Defendants argue that the notice should be sent to only the branches where the named plaintiffs worked, as they have not provided evidence that drivers in other branches are similarly situated. *Id.*

The MidCap Entities likewise take issue with the proposed notice, arguing that it employs inflammatory language, only identifies Plaintiffs' positions, fails to apprise putative class members of their potential obligations, and should draw more prominent attention to the fact that the court expresses no opinions about the merits of the case. Dkt. 67 at 14.

Plaintiffs state in their reply that they will confer with the defendants about the contents of the proposed notice and submit an agreed notice to the court or, in the event they cannot agree, submit competing or redlined versions of the notices. Dkt. 70 at 3. With regard to the argument that the notice should be confined to those employed by the branches that employed the named plaintiffs, they argue that notice should be sent to all Graebel drivers regardless of their home base, as they all

were, as a matter of economic reality, employed by Graebel Van Lines. *Id.* at 5. Plaintiffs do not address Graebel's request for an independent party to mail out the notices. *See id.*

The court finds that, given Plaintiffs' agreement, the parties should work together to attempt to agree on a form for the notice. Plaintiffs shall submit an agreed notice or a relined version containing the requested language from each party within twenty (20) days of the date of this order. Once approved by the court, notice should be administered by a third party, the notices may be mailed and emailed, and class members may execute their consent electronically via Right Signature.

Additionally, the parties shall meet and confer regarding the timeline for providing notice and allowing putative class members to opt in. Plaintiffs shall file an agreed order on the timeline, if it is agreed. If the parties cannot agree on the timeline, Plaintiffs shall arrange for a telephonic discovery conference with the court so that the court can rule on an appropriate timeline. Plaintiffs shall either submit an agreed timeline or arrange for the teleconference within twenty (20) days of the date of this order.

Finally, the Graebel Defendants noted in their response to the motion for certification that there were some issues with finding the information about potential class members due to the dissolution of the companies. *See* Dkt. 61. Given the length of time that has passed since the response was filed, the court trusts that these issues have since been resolved. The court therefore ORDERS that the Graebel Defendants, within twenty (20) days of the date of this order, provide Plaintiffs with a list of individuals who performed driving services for the entities identified as "GMI Subsidiaries" in the Graebel Acquisition Agreement, their successors, and including but not limited to, the subsidiaries making up the 33 Graebel branch terminal locations from July 1, 2016 to present.

The list shall include, to the extent the information is available, contact information including names, email addresses, mailing addresses, and dates of "employment."[3]

### IV. CONCLUSION

Plaintiffs' motion for conditional certification (Dkt. 56) is GRANTED. The following class is hereby conditionally certified:

> All Graebel Drivers performing driving services from July 1, 2016 to present, for the entities identified as "GMI Subsidiaries" in the Graebel Acquisition Agreement, their successors, and including but not limited to, the subsidiaries making up the 33 Graebel branch terminal locations.

The parties shall meet and confer regarding the proposed notice and timeline and submit documentation to the court as described above within twenty (20) days of the date of this order. Additionally, the Graebel Defendants shall provide Plaintiffs with a list of individuals meeting the class definition, as discussed above, within twenty (20) days of the date of this order.

Signed at Houston, Texas on July 25, 2018.

_____
Gray H. Miller
United States District Judge

---

[3] The court notes that Plaintiffs have also requested telephone numbers, drivers' license numbers, and birth dates of potential class members, but the court does not believe this information is needed since addresses and email addresses will be provided.