UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE GARCIA, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-1601 |
| | § | |
| VASILIA A/K/A "VAUNA" PETERSON, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court are (1) a motion filed by the plaintiffs for sanctions against defendant MidCap Funding X Trust ("MidCap Funding") and previous defendant MidCap Financial Trust, f/k/a MidCap Financial, LLC ("MidCap Financial Trust")[1] (collectively, the "MidCap Defendants") (Dkt. 129); and (2) a motion to filed a surreply by MidCap Funding (Dkt. 147). The motion to file a surreply (Dkt. 147) is unopposed and therefore GRANTED. The court held a hearing on the motion for sanctions on December 13, 2018. Dkt. 165. Having considered the motion for sanctions, response, reply, surreply, and the arguments at the hearing, the court is of the opinion that the motion for sanctions (Dkt. 129) should be GRANTED IN PART.

### I. BACKGROUND

This is a Fair Labor Standards Act ("FLSA") case filed by Jose Garcia on behalf of himself and those similarly situated ("Plaintiffs"). Dkt. 104 (second amended complaint). Plaintiffs are individuals who worked as drivers out of thirty-three local terminal offices owned or operated by Graebel Companies, Inc. and its affiliates. *Id.* According to Plaintiffs, they "started missing pay in

---

[1] The court dismissed the claims against MidCap Financial Trust for lack of personal jurisdiction on July 20, 2018. Dkt. 113.

early October of 2016," which they contend is directly related to the MidCap Defendants' "seiz[ing] control of the Graebel Entities in the fall of 2016." *Id.* Plaintiffs sued the MidCap Defendants, various Graebel entities, and certain individuals, alleging FLSA violations, breach of contract, quantum meruit, fraud, conspiracy, and aider and abettor liability. Dkt. 1. The MidCap Defendants filed a motion to dismiss for lack of personal jurisdiction (Dkt. 41), among other reasons. Dkt. 113. The court denied the motion to dismiss MidCap Funding, finding that this case arises from the same operative facts as a state-court receivership action initiated by MidCap Funding and that MidCap Funding therefore purposefully availed itself of the benefits and protections of Texas laws with regard to these facts. *Id.* The court dismissed the claims against MidCap Financial Trust for lack of personal jurisdiction. *Id.*

Plaintiffs contend that on September 5, 2018, which is approximately a month after the court ruled on the motion to dismiss, the MidCap Defendants produced a settlement agreement between MidCap Funding and Robert and Vasilia Peterson, who were the owners of the Graebel entities. Dkt. 129 & Ex. A. The settlement agreement relates to a lawsuit filed in 2017 in Dallas County, Texas, by MidCap Funding (the "Dallas Lawsuit"), and Plaintiffs assert that the MidCap Defendants failed to disclose the existence of the Dallas Lawsuit or the settlement agreement even though the case was settled on March 28, 2018, at the same time the court was "grappl[ing] with complex jurisdictional issues relating to consent" and the receivership. Dkt. 129. Plaintiffs point out that the settlement agreement was made by MidCap Funding on behalf of itself *and* MidCap Financial Trust. *Id.*; *see* Dkt. 130. Plaintiffs argue that the agreement released "claims between co-defendants in this action under the cloak of secrecy during the pendency of this lawsuit, which by itself raises serious concerns about litigation collusion." Dkt. 129. They contend that the MidCap Defendants should have disclosed the existence of this lawsuit and settlement agreement pursuant to Plaintiffs' requests

for production numbers 9, 27, and 28. *Id.* (citing Ex. B). Additionally, Plaintiffs argue that the MidCap Defendants had a duty to inform the court about the existence of the other lawsuit under Local Rule 5.2, which requires parties to advise the court of related current or recent litigation. *Id.* Plaintiffs believe that the MidCap Defendants' failure to disclose this lawsuit and settlement interfered with the court's ability to properly consider the MidCap Defendants' motion to dismiss and "may have been determinative as to MidCap [Financial] Trust." *Id.* They argue that the court must sanction the MidCap Defendants under Federal Rule of Civil Procedure 26(g)(3) and that the court has discretion to craft the terms of the sanction. *Id.* Plaintiffs request that the court sanction the MidCap Defendants by (1) finding personal jurisdiction over MidCap Financial Trust; (2) equitably tolling the statute of limitations; and (3) awarding attorneys' fees incurred in defending the motion to dismiss. *Id.*

MidCap Funding asserts that Plaintiffs have no new facts justifying the exercise of personal jurisdiction over MidCap Financial Trust or a reconsideration of the order dismissing the claims against MidCap Financial Trust for lack of personal jurisdiction. Dkt. 141. MidCap Funding additionally asserts that the MidCap Defendants' responses to discovery complied with the rules. *Id.* It contends that the discovery requests seeking all communications between MidCap and Graebel related to the Credit and Security Agreement were overly broad because they exceeded the scope of the jurisdictional allegations upon which the court grated discovery and the scope of Plaintiffs' allegations generally. *Id.* MidCap Funding additionally contends that the MidCap Defendants made good-faith objections and informed Plaintiffs that they did not search or review all electronic communications. *Id.* MidCap Funding claims that the Dallas Lawsuit was an unrelated lawsuit to which MidCap Financial Trust was not a party and that all of the documents Plaintiffs contend were not disclosed were outside of the e-discovery agreement in this case. *Id.* Thus, it contends that there

are no grounds for the court to sanction MidCap Funding. *Id.* Moreover, it argues that the sanction requested is "disproportionately severe." *Id.* With regard to exercising jurisdiction, MidCap Funding asserts that the Dallas Lawsuit cannot create jurisdiction. *Id.* With regard to the request that the court toll the statute of limitations as a sanction, MidCap Funding asserts that it bears no relationship to the alleged nondisclosure of the lawsuit. *Id.* MidCap Funding did not respond to Plaintiffs' argument that it should have informed the court about the related litigation under Local Rule 5.2.

In their reply, Plaintiffs contend that while MidCap Funding was the plaintiff in the Dallas Lawsuit, MidCap Financial Trust was a "Releasing MidCap Party." Dkt. 146. They point out that the court found it could exercise personal jurisdiction over MidCap Funding because MidCap Funding filed a receivership action in Dallas that arose from the same operative facts as this lawsuit. *Id.* Plaintiffs state that they "can only wonder what would have happened had MidCap played by the rules and the Court [had] known about the second related Guaranty Lawsuit [(the Dallas Lawsuit)] when Plaintiffs first responded to MidCap's jurisdictional challenge." *Id.* Plaintiffs contend that the MidCap Defendants' failure to produce evidence of Texas contacts by disclosing this lawsuit, which Plaintiffs contend was material to the administration of due process, "should be deemed as an admission that MidCap [Financial] Trusts' participation is sufficient to establish consent." *Id.* Plaintiffs assert that the MidCap Defendants did not disclose that responsive documents were being withheld, and the e-discovery agreement argument is a red herring. *Id.* Plaintiffs point out that the e-discovery agreement did not relieve the MidCap Defendants of "other discovery obligations," and the other lawsuit was "not sitting on some MidCap server" as the lawyers in this case are the same lawyers who represented MidCap in the Dallas Lawsuit. *Id.*

The motion for sanctions is now ripe for disposition.

## II. LEGAL STANDARD

Plaintiffs seek sanctions pursuant to Federal Rule of Civil Procedure 26 and the court's inherent authority. Dkt. 129. Under Rule 26(g) an attorney of record must sign every discovery response. Fed. R. Civ. P. 26(g). The signature certifies that, "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" the disclosure are "complete and correct as of the time [they are] made" and the responses are consistent with the rules, among other things. *Id.* If "a certification violates [the] rule without substantial justification, the court, on motion or on its own, must impose and appropriate sanction on the signer, the party on whose behalf the signor was acting, or both." Fed. R. Civ. P. 26(g)(3). The sanction may include reasonable expenses, including attorneys' fees, caused by the violation. *Id.*

Additionally, the court has the inherent power to sanction an attorney. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S. Ct. 2123 (1991); *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995). This power, however, "must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. The U.S. Supreme Court has acknowledged that sanctions are often appropriate in circumstances in which an attorney has, for instance, been willfully disobedient to a court order or when the attorney has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Id.* at 45-46. "In order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith.'" *Chaves*, 47 F.3d at 156. "When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions . . . . 'A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing

fees.'" *Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292-93 (5th Cir. 1997) (citations omitted).

## III. ANALYSIS

The court agrees with Plaintiffs that the MidCap Defendants should have disclosed the Dallas Lawsuit. The same lawyers represented the MidCap Defendants in both cases, and information relating to the Dallas Lawsuit is relevant to personal jurisdiction and responsive to Plaintiffs' Requests for Production 9, 27, and 28. While the court understands MidCap Funding's argument that electronic documents relating to the Dallas Lawsuit may not have been captured with the search terms in the e-discovery agreement, the Dallas Lawsuit is evidence of contacts with the state, the MidCap Defendants' lawyers were clearly aware of the Dallas Lawsuit, and it should have been disclosed to Plaintiffs during jurisdictional discovery whether documents relating to the lawsuit came up when the search terms were entered or not. The court thus agrees with Plaintiffs that a sanction for failure to disclose is appropriate.

However, the first two sanctions proposed by Plaintiffs are not appropriate. The court cannot find that it has personal jurisdiction over MidCap Financial Trust, over whom it does not have jurisdiction, as a sanction.² And Plaintiffs' proposal that the court toll the statute of limitations with regard to plaintiffs who have not yet opted in has nothing to do with the MidCap Defendants' failure to disclose the Dallas Lawsuit. The court believes the proposal that it require the MidCap Defendants to pay the attorneys' fees incurred in defending against the motion to dismiss is more appropriate, though the entire amount of fees may be disproportionate to the conduct being

---

² The fact that MidCap Funding released claims relating to MidCap Financial Trust in the Dallas Lawsuit would not have impacted the court's jurisdictional decision with regard to MidCap Financial Trust.

sanctioned. Thus, Plaintiffs' motion for sanctions is GRANTED IN PART. MidCap Funding shall pay Plaintiffs' attorneys' fees incurred in submitting, replying, and arguing the motion for sanctions, and MidCap Funding shall pay a potion of Plaintiffs' attorneys' fees incurred in defending against the motion to dismiss at an amount deemed reasonable by the court at a later date.

### IV. CONCLUSION

MidCap Funding's motion to file a surreply (Dkt. 147) is GRANTED.

Plaintiffs' motion for sanctions (Dkt. 129) is GRANTED IN PART. MidCap Funding is ORDERED to pay Plaintiffs' attorneys' fees associated with the motion for sanctions and a portion of Plaintiffs' attorneys' fees associated with the motion to dismiss at an amount determined by the court at a later date. Plaintiffs shall submit a fee request to the court within thirty (30) days of the date of this order.

Signed at Houston, Texas on January 10, 2019.

_____
Gray H. Miller
Senior United States District Judge