UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE GARCIA, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-1601 |
| | § | |
| VASILIA A/K/A "VAUNA" PETERSON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion for summary judgment that was filed by various defendants affiliated with Graebel Van Lines Holdings, LLC. Dkt. 230 (motion); Dkt. 231 (memo in support of motion). The Graebel-affiliated entities ("Graebel Entities") have been dismissed from this lawsuit. However, the claims against defendant MidCap Funding X Trust ("MidCap") are still pending, and MidCap joined the motion for summary judgment. Dkt. 283. The court will therefore address the motion as if it had been filed by MidCap.

After considering the motion, response, reply, and applicable law, the court is of the opinion that the motion should be GRANTED IN PART.

**I. BACKGROUND**

With regard to the issues in the instant motion for summary judgment, this is an FLSA collective action brought by individuals who drove moving trucks for the Graebel Entities. Dkt. 114. MidCap had a security interest in the Graebel Entities, and the Graebel Entities dissolved in March 2017. Dkt. 114. The collective action consists of individuals who opted in from the following group: "All Graebel Drivers performing driving services from July 1, 2016 to present, for the entities identified as 'GMI Subsidiaries' in the Graebel Acquisition Agreement, their successors, and

including but not limited to, the subsidiaries making up the 33 Graebel branch terminal locations."
*Id.*

MidCap moves for summary judgment on the plaintiffs' claims, arguing that (1) the plaintiffs were contractors, not employees; (2) the plaintiffs were exempt from the FLSA under the Motor Carrier Act ("MCA") Exemption; (3) there is no private cause of action for record-keeping violations; (4) the plaintiffs cannot recover under a quantum meruit theory because they each entered into ICOAS, which preclude the claim; (5) the plaintiffs fail to identify any false, material misrepresentations that were known to be false when made; and (6) the plaintiffs cannot demonstrate any conspiracy between the defendants and MidCap. Dkt. 231. This order addresses only the argument that the plaintiffs were exempt from the FLSA under the MCA Exemption.

## II. LEGAL STANDARDS

### A. Summary Judgment

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

**B.      FLSA Motor Carrier Exemption**

Under the MCA Exemption, the FLSA's overtime requirement does not apply to "any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49." 29 U.S.C. § 213(b)(1). The Secretary of Transportation may set requirements "for qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and . . . qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety." 49 U.S.C. § 31502. Under 29 C.F.R. § 782.2(a), the MCA Exemption applies to employees who "(1) [a]re employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the [MCA]"; and "(2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [MCA]." The "exemption applies 'to those employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (I) As that of driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce.'" *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 577 n.4 (5th Cir. 2018).

"Motor carrier" means "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). A "motor private carrier" is "a person, other than a motor carrier, transporting property by motor vehicle when . . . (A) the transportation is as provided in section 13501 of this title; (B) the person is the owner, lessee, or bailee of the property being transported;

3

and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." *Id.* § 13102(15). "Transportation" includes "(A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." *Id.* § 13102(23).

The Corrections Act provides an exception to the MCA Exemption for—relevant to this case—employees who drive motor vehicles weighing 10,000 pounds or less who are employed by a motor carrier or private motor carrier. *Carley*, 890 F.3d at 579 (discussing the SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, § 306(a), ©), 122 Stat. 1572, 1621 (June 6, 2008), which is found in the notes of 29 U.S.C. § 207). The plaintiffs bear the initial burden of proving they are covered by the FLSA's overtime pay requirement, and the defendant bears the burden of showing the MCA Exemption applies. *Id.* The plaintiffs then bear the burden of proving that the Corrections Act applies to require overtime notwithstanding the MCA Exemption. *Id.* at 580.

### III. ANALYSIS

MidCap argues that the Graebel Entities meet the requirements of the MCA Exemption because the plaintiffs cannot meet their burden of showing that they did not drive vehicles weighing 10,000 pounds or less and the plaintiffs are drivers who either crossed state lines or could have been called on to cross state lines. Dkt. 231. The plaintiffs stipulate that the trucks they drove exceeded the minimum threshold for purposes of the MCA exemption. Dkt. 269 at 20. And the plaintiffs do

4

not take issue with MidCap's arguments that the were engaged in interstate commerce. *See* Dkt. 253. Instead, the plaintiffs argue that they were not subject to the Department of Labor Regulations because they were not "motor vehicle carriers." *Id.* The plaintiffs contend that in order to be "motor vehicle carriers" the drivers would have had to "transport property for sale, lease, rent or bailment or to further a commercial enterprise," citing 49 U.S.C. § 13102(13). *Id.* They assert that moving office or household items for the Graebel Entities' customers does not qualify. *Id.*

The statute refers to "motor carriers" and "private motor carriers," not "motor vehicle carriers." *See* 49 U.S.C. § 31502. The section of the MCA definitions the plaintiffs cite in support of their "motor vehicle carriers" argument, § 13102(13), contains the definition for "individual shipper"; this definition does not contain the text the plaintiffs quote. The next definition in the section is for "motor carrier," and that definition also does not contain text that the plaintiffs quote. *See* 49 U.S.C. § 13102(14). The definition of "motor private carrier," however, does contain that text. *See* 49 U.S.C. § 13102(15).

MidCap argues that the Graebel Entities were motor carriers, not motor private carriers, and that they meet the definition of motor carriers. The court agrees. A "motor carrier" means "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). The Graebel Entities provided "motor vehicle transportation for compensation," as "transportation" includes "arranging for, receipt, delivery, transfer in transit . . . storage, handling, packing, unpacking, and interchange of passengers and property." *See* 49 U.S.C. § 13102(14), (23). MidCap has met its burden of showing the Graebel Entities were motor carriers and the plaintiffs, as Graebel drivers, were exempt under the MCA Exemption.

The plaintiffs do not present any other arguments relating to the MCA Exemption. Accordingly, MidCap's motion for summary judgment is GRANTED, and summary judgment is ENTERED in MidCap's favor with regard to the FLSA overtime claims.

### IV. Conclusion

MidCap's motion for summary judgment (Dkt. 230) is GRANTED IN PART. It is GRANTED with respect to the plaintiffs' FLSA overtime claims, which are DISMISSED WITH PREJUDICE. The court will consider the motion as it relates to remaining causes of action at a later date.

Signed at Houston, Texas on August 1, 2019.

_____
Gray H. Miller
Senior United States District Judge